# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| SCOTT COULIER, Individually, and on Behalf of All Others Similarly Situated, | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | CIVIL ACTION H-15-190 |
| UNITED AIRLINES, INC. and DOES 1-50, | § § | |
| *Defendants*. | § § | |

## ORDER

Pending before the court is a motion to dismiss filed by defendant United Airlines, Inc. ("United"). Dkt. 15. After considering the motion, response, reply, and applicable law, the court is of the opinion that United's motion should be GRANTED.

## I. BACKGROUND

This is a breach of contract case relating to United's "Low Fare Guarantee." Dkt. 1. Plaintiff Scott Coulier purchased three one-way tickets on United Airlines from United's website, united.com, on January 26, 2014. Dkt. 1. He asserts that he was aware, at the time, that United had a Low Fare Guarantee, and he thus assumed that cheaper tickets were not available for any of the tickets he purchased. *Id.* Coulier claims that he realized after purchasing the three tickets together that he could have purchased the same tickets separately for less on united.com. *Id.* Coulier contends that when consumers purchase tickets as a group on united.com, if there are not enough tickets available in the lowest available class of fares, then the price for each ticket will be increased to the next available fare category, and the lower fare category will disappear from united.com and all other websites selling United tickets. *Id.* For instance, if a consumer wishes to purchase three tickets at

the lowest price and the only seats available on the plane are two seats at $100 each and five seats at $150 each, if the consumer buys three tickets separately on united.com before any other consumers take the $100 fares, the consumer will be able to purchase three tickets for $350 (two at $100 and one at $150).  There would be four seats still available that cost $150 each.  No seats costing $100 would be left.  If the consumer instead buys the three tickets together, according to Coulier, rather than charging only $100 for the first two seats, United increases the two available $100 seats to $150 and sells all three seats at $150 each.  The three seats purchased together thus cost $450 ($150 times 3).  The $100 fares disappear altogether, and there are still, just as in the scenario in which the consumer bought the seats in separate transactions, four seats left at $150 each.

The Low Fare Guarantee advertised on united.com states:

> Forget those so-called low-fare travel websites and spend less time planning and searching for flights. When it comes to finding the lowest United® fare online, we guarantee you will find it on united.com. In fact, if you find a fare for the same flight, itinerary and cabin at a price that is lower than the fare offered on united.com by $10 or more, we'll make up the difference and give you a $100 USD Electronic Travel Certificate. And not only will you find the lowest fare at united.com, but you'll never pay a service fee for booking online.
> Here's how this offer works:
> • Purchase your ticket at united.com (with a qualifying billing address).
> • If you find a published retail price online, for the same United flight, itinerary and cabin, that is lower than the fare purchased on the same day of your original United purchase by $10 or more, call your local United Customer Contact Center office and a representative will connect you with one of our specialists to file your claim.
> • We'll refund the difference and give you a $100 USD Electronic Travel Certificate toward a future United flight if we can verify the lower online fare.
> We've made united.com one of the most user-friendly travel sites anywhere. You can manage all your flight, hotel and car rental reservations, save up to 75% when booking hotel stays, and save time by checking in online for your flight.

*Id.* The terms and conditions of the Low Price Guarantee state:

> 1. Your claim must be made by midnight local time in the country of this country-specific website on the same day on which the ticket is purchased, or within four hours if the ticket is purchased after 8 p.m. local time. Claims must be made by calling your local United Customer Contact Center office. Claims for this offer may not be made through any other United Airlines phone number.
> * * *
> 5. Tickets must be the least expensive available on united.com for the chosen itinerary at the time of purchase. "Lower online fare" means air-only fares which are displayed and sold on a publicly-accessible Internet site for the exact same flights on the same travel dates for the same travel itinerary. Corporate, military, vacation package, opaque agencies and other status discount fares are not eligible. Fares must be for the same cabin (United Global FirstSM, United BusinessFirst®, United First®, United Business® or United Economy®), and for the exact same flights that carry the same fare restrictions.
> 6. United Airlines must be able to verify the lower online fare online at the time of claim. Other methods of verification (e.g., faxes, screen prints, etc.) are not eligible.

*Id.*

Coulier contends that he purchased the tickets on united.com, as required by the Low Price Guarantee. *Id.* He was, however, unable to prove that there was a lower published price online because, contemporaneously with selling a given ticket at the next-highest fare category when it the ticket is sold in a group, United replaces the allotment of lower fares with more expensive fares, resulting in the elimination of any available lower fares. *Id.* Coulier asserts that this made it impossible for him to locate the less expensive fares after he completed his purchase and it was impossible for any United representative to find the lower fares on a publicly accessible Internet site. *Id.*

Coulier filed this lawsuit against United on behalf of himself and similarly situated individuals on January 21, 2015. *Id.* He asserts only one cause of action: breach of contract. *Id.* Coulier contends that the Low Fare Guarantee becomes part of the consumer's ticket contract with

United as soon as the consumer purchases a ticket on united.com and that United breached the contract by failing to provide the lowest price per ticket when tickets were purchased as a group. *Id.*

United moves to dismiss Coulier's claim. Dkt. 15. United argues that Coulier did not perform the terms and conditions of the Low Fare Guarantee, which require Coulier to find a fare on a different website for the exact same travel itinerary that is at least $10 less than the fare he paid on united.com and file a claim with United by midnight on the date of purchase. Dkt. 15-1. United additionally argues that Coulier's claim is preempted by the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C. §§ 40101, *et seq.*, because Collier attempts to add an obligation that United did not voluntarily undertake in its Low Fare Guarantee. *Id.*

Coulier argues that the Low Fare Guarantee does not state that the low fare must be on a different website or that it is for only single ticket purchases. Dkt. 18. He asserts that he was excused from performing the terms and conditions of the Low Fare Guarantee because United made it impossible. *Id.* As far as the ADA, Coulier contends that he is alleging a breach of contract claim and nothing more, and that breach of contract claims are not preempted by the ADA. Dkt. 18.

The court will first discuss the legal standard for motions to dismiss for failure to state a claim. It will then address whether Coulier has stated a breach of contract claim against United.

## II. LEGAL STANDARD

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1964–65 (2007) (quoting *Coneley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99 (1957)). In considering a 12(b)(6) motion to dismiss a complaint, courts generally must accept the factual allegations contained in the complaint as true. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale*

*Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court does not look beyond the face of the pleadings in determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964–65 (citing *Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)) (internal citations omitted). And, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965. The supporting facts must be plausible—enough to raise a reasonable expectation that discovery will reveal further supporting evidence. *Id.* at 1959.

### III. ANALYSIS

Coulier's sole cause of action is a breach of contract claim. In order to determine whether Coulier has stated a claim for breach of contract, the court must first determine if the Low Fare Guarantee is an offer to enter into a unilateral contract or if it is part of the bilateral contract of carriage entered into when a consumer purchases an airline ticket. United contends that the Low Fare Guarantee is an offer to customers who purchase tickets through the united.com website, that customers may accept the offer by performance, and that performance creates a unilateral contract. Dkt. 15-1. United argues that Coulier's complaint demonstrates that he failed to perform because he does not allege that he found a published fare for the same flight and itinerary on a different website that was lower than the fare offered on united.com, called his local United Customer Care Center office, or filed a claim within the specified time limits. *Id.* United also argues that Coulier's group purchase was not for the same "itinerary" as a single ticket because the "itinerary" should include the number of guests. *Id.* Coulier argues, on the other hand, that he entered into a binding

5

contract the moment he purchased his tickets on united.com and that the Low Fare Guarantee was a warranty that is part of the primary ticket contract (the contract of carriage). Dkt. 18. He contends that "itinerary" does not include the number of passengers and that nothing in United's Low Fare Guarantee states that he had to find the lower fare on a different website. *Id.*

## A.      Caselaw Relating to Airline Low Fare Guarantees

The only case the parties cite dealing with the purchase of a travel ticket and a promise or offer relating to a guarantee of the lowest price is *Opper v. Delta Air Lines, Inc.*, No. 14-C-962, 2015 WL 94193 (E.D. Wis. Jan. 7, 2015). In *Opper*, Opper filed a claim against Delta Air Lines ("Delta") for violating its "Best Fare Guarantee." *Opper*, 2015 WL 94193, at *1. Delta's Best Fare Guarantee stated, "THE BEST DELTA FARES ON THE WEB—OR YOUR MONEY BACK If you find a fare that is at least $10 lower on another website for the exact same Delta itinerary, then we'd like to make it right." *Id.* Opper claimed that Delta breached the guarantee by not offering the cheapest fare on each leg of a multi-leg journey. *Id.* Delta's website bundled the fares together for a multi-leg journey so that all legs would be in the same class fare, thus resulting in legs that may have been available at a lower class fare costing more when purchased as part of a multi-leg journey if the lower class of fares was not available on all legs. The court treated the Best Fare Guarantee as a warranty. *Id.* at *2. The court pointed out that the warranty specifically said the lower fare had to be on "another website" and for the "exact same itinerary." *Id.* Since Opper did not identify any fares on other websites for the exact same itinerary, and instead relied exclusively on low fares that were available on delta.com, she failed to state a claim upon which relief could be granted *Id.* at *3. The court specifically noted that "the essence of the guarantee is comparative," and Opper did not provide any basis for comparison. *Id.* It held that Opper's "reading of the warranty [was] fundamentally flawed because it [viewed] the warranty as making substantive claims about what

6

kinds of fares will be available, when instead the warranty merely makes a comparative claim asserting that fares for Delta flights will be lowest at Delta's own website.  The warranty appears to be a simple effort to convince customers to cut out the middle man and use Delta's website to book flights.  The fact that Delta might not *offer* certain fares to certain customers does not violate the guarantee."  *Id.*

First, the court notes that the plain language of United's Low Fare Guarantee is different than the guarantee in *Opper*.  The *Opper* guarantee actually states that the lower price has to be on "another website."  United's guarantee clearly states that the lower price must be published "online."  The court will not read any other limitations into the guarantee.  Thus, the fact that Coulier alleges the alleged lower fares were available on united.com as opposed to other websites does not preclude his claim.

While the *Opper* case is certainly the most relevant case provided by the parties and the only case the court has found that is similar to this case, it is of limited value in regard to the question of whether the guarantee is a unilateral contract or part of the contract of carriage because the *Opper* court did not analyze whether Opper had stated a claim based on offer, acceptance, or performance.  Instead, it discussed the guarantee as if it were a warranty and a contract without specifying how the contract was formed or its relation to the contract of carriage.  Coulier argues that this court should consider the Low Fare Guarantee here to be a "warranty," like the warranty in *Opper*, and he contends the warranty is "always part of the primary, existing Contract for the airline ticket."  Dkt. 18.  The *Opper* case, however, never states that the "warranty" was part of the contract of carriage, and Coulier does not provide the court with any authority indicating that it should be.

**B.     Is the Guarantee Part of the Contract of Carriage or an Offer for a Unilateral Contract?**

Coulier contends that the Low Fare Gurantee is part of the bilateral contract of carriage entered into when he purchased the airline tickets.  Dkt. 18.  United argues that the Low Fare Guarantee cannot be part of the contract for the carriage because that contract does not incorporate the Low Fare Guarantee and the Low Fare Guarantee does not imply it is incorporated into the contract of carriage.  Dkt. 19.  United contends, instead, that the Low Fare Guarantee expressly states numerous times it is an "offer," which makes it clear that it is an offer for a unilateral contact.  *Id.*

The court finds that the Low Fare Guarantee is not part of the contract of carriage.  United's contract of carriage does not incorporate the Low Fare Guarantee, and the Low Fare Guarantee does not indicate that it is part of the broader contract.  *See* Dkt. 15, Ex. 1 (Low Fare Guarantee); Dkt. 19, Ex. A (United's Contract of Carriage).  Moreover, the Low Fare Guarantee is not a warranty for *any* purchase of any ticket on United, it is an offer relating to purchases made specifically on united.com, and its purpose is clearly to incentivize purchasing one's ticket on united.com even though tickets may be purchased elsewhere.  The Low Fare Guarantee is separate and distinct from the contract of carriage.

By the plain terms of the Low Fare Guarantee, it is an "offer."  Acceptance is completed by performing the terms outlined in the portion of the guarantee that states: "Here's how this offer works."  To accept, a customer must (1) purchase a ticket at united.com; (2) find a published retail price online for the same United flight, itinerary, and cabin, that is lower than the fare purchased on the same day by $10 or more; (3) call the local United Customer Contact Center office; and (4) file a claim.  Dkt. 15, Ex. 1.  Once this performance is complete, United must refund the difference in

price and provide the customer with a $100 travel certificate.  *Id.*  The guarantee is thus an offer for a unilateral contract that the customer must accept by performance.

**C.      Is Buying Tickets on united.com Sufficient Performance?**

All Coulier contends that he did with regard to accepting the offer was purchase tickets on united.com.  He asserts further performance was excused because United made it impossible by eliminating the lower fares the moment he purchased tickets.  Dkt. 18.  United argues that the unilateral contract was not binding until Coulier performed, and he did not perform because he did not find a lower published price subsequent to his purchase for the same itinerary, did not call United, and did not file a claim.  Dkt. 15-1.

Under Texas law, a unilateral contract is "created by the promisor promising a benefit if the promisee performs.  The contract becomes enforceable when the promisee performs." *Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 302 (Tex. 2009) (citations and quotations omitted).  The "expenditure of time and effort is sufficient consideration to make a unilateral contract binding and enforceable." *Sunshine v. Manos*, 496 S.W.2d 195, 199 (Tex. Civ. App. 1973, writ ref'd n.r.e.). Under Texas law,  a "party's nonperformance of a contract will be excused when that party's performance is prevented by the other party." *Sgroe v. Wells Fargo Bank, N.A.*, 941 F. Supp. 2d 731, 746 (E.D. Tex. 2013) (citing Texas law); *see Longview Constr. & Dev., Inc. v. Loggins Constr. Co.*, 523 S.W.2d 771, 779 (Tex. Civ. App.—Tyler 1975, writ dism'd) ("Generally speaking, where one party to a contract, by wrongful interference prevents the other party from performing, such action by the party at fault constitutes a breach of the agreement.")  In such a case, the injured party may recover any damages sustained.  *Longview Constr.*, 523 S.W.2d at 779.  There is, however, a distinction between nonperformance of unilateral and bilateral contracts.  "'A bilateral contract is one in which there are mutual promises between two parties to the contract, each party being both

9

a promisor and a promisee.' . . . A unilateral contract, on the other hand, is 'created by the promisor promising a benefit if the promisee performs.'" *Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 302 (Tex. 2009) (citations omitted).  A unilateral contract becomes enforceable "'*when the promisee performs*.'"  *Id.* (quoting *Plano Surgery Ctr. v. New You Weight Mgmt. Ctr.*, 265 S.W.3d 496, 503 (Tex. App.—Dallas 2008, no pet.)).  "[W]hat matters is whether the promise became enforceable by the time of the breach."  *Id.* at 303.  That being said, "Texas courts have long held that expenditure of time and effort is sufficient consideration to make a unilateral contract binding and enforceable." *Gaede v. SK Investments, Inc.*, 38 S.W.3d 753, 760 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).  There is, of course, "'no fixed formula by which [substantial performance] can be determined because the word 'substantial,' the meat of the doctrine, in this context, is a relative term.'"  *Pegg v. Kohn*, 861 N.W.2d 764, 767 (N.D. 2015) (quoting *Dittmer v. Nokleberg*, 219 N.W.2d 201, 208 (N.D. 1974)).

Here, United's offer did not become enforceable because none of Coulier's allegations amounts to substantial performance of the terms of the offer.  The only performance alleged is buying a group of *three tickets* on united.com in a single transaction.  The first step of the offer is to "purchase your *ticket*"—a singular object.[1]  Coulier does not allege one transaction for a single ticket.  He alleges he purchased a group of three *tickets* at the same time.  Since the offer is for the purchase of one, singular, *ticket*, it simply does not apply to a group of tickets purchased together.  United did not make any promises about the price of group purchases.  United was free to withdraw its offer prior to it being accepted by performance, and under the facts alleged, the offer was never

---

[1] Clearly, there is a difference in buying three tickets in one transaction and purchasing them each separately.  If Coulier had purchased each ticket separately, the second and third tickets may have been purchased by somebody else before he got to the second or third transaction.

accepted by performance—substantial or otherwise—because Coulier does not allege he purchased a "ticket" as opposed to a group purchase of "tickets."[2]

There is additional language, when one reviews the entire guarantee, that makes it clear that the offer was for the lowest fare for a single ticket, not a set of multiple tickets. The second sentence of the first paragraph uses the term "fare" in the singular tense: "When it comes to finding *the* lowest United *fare* online . . . ." The next sentence states: "In fact, if you find *a fare* for the same flight . . . lower than *the fare* offered on united.com . . . ." The term "fare" is repeated in this manner throughout the first paragraph and the offer itself. The terms and conditions also contain several reference to "the ticket" and "fare" in the singular. There are also, however, some general references to purchases of "tickets" in the terms and conditions, but these references appear to be discussing the way in which the offer works in general as opposed to describing the specific transaction in which a customer is attempting to accept the offer.

Moreover, even if one were to construe the offer as applying to a group purchase, the court finds that merely purchasing the tickets does not constitute substantial performance. Coulier contends it was impossible to perform the remaining steps because the lower fares disappeared after his purchase. The court agrees that it was impossible to perform all of the terms and conditions because clearly if Coulier called, United would be unable to independently verify the lower fare online at the time of Coulier's claim as required. But Coulier does not contend that he even tried to call to make a claim. Merely purchasing the tickets on united.com, as opposed to purchasing them elsewhere, is not an expenditure of enough time and money in performing this unilateral contract to constitute substantial performance, and it was not impossible to call United and try to make a claim.

---

[2] If Coulier had purchased them individually, under the facts alleged in the complaint, he would have received the lowest price for each ticket—assuming the three seats were still available.

11

Coulier may have been excused from proving there was currently a lower fare available, but he was not excused from the other requirements.

Because Coulier did not substantially perform the unilateral contract, United was not obligated to perform.[3]   United's motion to dismiss is GRANTED.

## IV. CONCLUSION

United's motion to dismiss (Dkt. 15) is GRANTED.   Coulier's claims on behalf of himself and those similarly situated are DISMISSED WITH PREJUDICE.   A final judgment will issue concurrently with this order.

Signed at Houston, Texas on May 21, 2015.

Gray H. Miller
United States District Judge

---

[3]  Because the court finds that Coulier has not alleged substantial performance, there is no need to address United's contention that the group of three tickets was not the same "itinerary" as a single ticket or its argument that Coulier's claim is preempted by the ADA.

12